**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

DEMETRI G. COCHRAN,

Plaintiff,

v. No. 2:25-cv-00883-SMD-JHR

NICKLAUS ENGINEERING, INC.,
OASIS OUTSOURCING ADMIN II, INC., and
SPENCER CONSTRUCTION LLC,

Defendants.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** is before the Court on Defendant Nicklaus Engineering, Inc.'s Amended Motion for a More Definite Statement, Doc. 5 ("Mot. for More Def. Statement"), and Motion to Dismiss Count I of Plaintiff's Amended Complaint, Doc. 26 ("Mot. to Dismiss"). Plaintiff responded in opposition to the Motion to Dismiss, Doc. 31 ("Pl.'s Resp."), and Nicklaus filed a reply, Doc. 34 ("Def.'s Reply"). The Court has reviewed the parties' submissions, the record, and the relevant law. For the reasons below, the Motion for More Definite Statement is **DENIED AS MOOT**, and the Motion to Dismiss is **DENIED**.

Nicklaus filed its Motion for More Definite Statement before Plaintiff filed the operative Amended Complaint. *See* Doc. 16 ("Am. Compl."). The Motion for More Definite Statement challenges the original Complaint as too vague or ambiguous to permit Nicklaus to prepare a response. *See* Doc. 5. Plaintiff thereafter filed the Amended Complaint, and Nicklaus subsequently filed the Motion to Dismiss specifically challenging Count I of that operative pleading. "[A]n amended complaint ordinarily supersedes the original and renders it of no legal effect." *Davis v. TXO Prod. Corp.*, 929 F.2d 1515, 1517 (10th Cir. 1991). Because the Amended

Complaint superseded the pleading challenged by the Motion for More Definite Statement and Nicklaus subsequently filed a motion directed to Count I of the operative pleading, the Motion for More Definite Statement is moot.

**BACKGROUND**

Plaintiff Demetri G. Cochran alleges that Nicklaus Engineering, Inc. ("Nicklaus") and Oasis Outsourcing Admin II, Inc. ("Oasis") employed him as a Project Engineer and later Project Manager on the El Paso T.I.M.P. project. Doc. 16 ("Am. Compl.") ¶¶ 1, 12. Spencer Construction LLC ("Spencer") allegedly was Nicklaus's joint-venture partner on the government contract where Plaintiff worked. *Id.* ¶ 4.

According to the Amended Complaint, in March 2025, the Camino Real Regional Utility Authority ("CRRUA") directed Nicklaus to return its water meter and advised that water could not be taken from the source until the meter was recalibrated and reissued. *Id.* ¶ 13. Plaintiff alleges that a Spencer superintendent nevertheless announced that Spencer would "steal water from CRRUA," and that the following day Plaintiff observed a Spencer employee taking water without a meter. *Id.* ¶¶ 14–16. Plaintiff allegedly objected to the conduct and reported the theft to the U.S. Border Patrol because his name appeared on cost estimates charging the federal government for the same water. *Id.* ¶¶ 15, 18.

Plaintiff alleges that Patrick Spencer, the owner of Spencer, thereafter began retaliating against him. *Id.* ¶ 19. After an allegedly hostile encounter with Spencer personnel, Plaintiff reported the conduct to his Nicklaus supervisor. *Id.* ¶¶ 21–22. Plaintiff further alleges that Spencer personnel subsequently attacked his competence, subjected him to monitoring, and continued to harass him. *Id.* ¶¶ 24–25. Plaintiff again reported the conduct to Nicklaus, allegedly stating that he was being singled out for reporting the theft and retaliated against in an effort to force him to

resign. *Id.* ¶ 26. Later that day, Nicklaus instructed Plaintiff to take paid time off and refrain from attending a project meeting. *Id.* ¶ 27.

Plaintiff alleges that he was instructed to contact Nicklaus before returning to work on May 12, 2025. When he did so, according to the Amended Complaint, "Nicklaus terminated his employment." *Id.* ¶ 28. Plaintiff further alleges that he was offered a choice between a one-month severance package and relocation to California at the same rate of pay, which he characterizes as economically infeasible and a constructive discharge. *Id.* Plaintiff alleges that Nicklaus and Oasis terminated him because he reported the alleged theft and refused to participate in concealing the conduct. *Id.* ¶ 29.

Count I asserts retaliatory discharge in violation of New Mexico public policy against Nicklaus and Oasis. *Id.* ¶¶ 33–40. Nicklaus moves to dismiss Count I under Federal Rule of Civil Procedure 12(b)(6), principally arguing that the Amended Complaint does not establish that New Mexico law applies, does not plausibly allege an actual or constructive discharge, and does not plausibly allege a causal connection between Plaintiff's protected conduct and the end of his employment. Nicklaus seeks dismissal with prejudice.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual allegations, accepted as true, "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the pleaded facts permit the Court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* The Court accepts well-pleaded factual allegations as true and views them in the light most favorable to the plaintiff,

but it does not accept legal conclusions as true. *Id.* at 678–79; *Khalik v. United Air Lines*, 671 F.3d 1188, 1190–91 (10th Cir. 2012).

The pleading standard requires more than labels and conclusions, but it does not impose a heightened fact-pleading requirement. *Khalik*, 671 F.3d at 1191; *see Skinner v. Switzer*, 562 U.S. 521, 530 (2011). The Court assesses plausibility in the context of the complaint as a whole. *Chilcoat v. San Juan Cnty.*, 41 F.4th 1196, 1207 (10th Cir. 2022).

**DISCUSSION**

New Mexico recognizes a narrow exception to the general rule of at-will employment when an employee is discharged in contravention of a clear mandate of public policy. *Shovelin v. Cent. N.M. Elec. Coop., Inc.*, 850 P.2d 996, 1006 (N.M. 1993). To recover for retaliatory discharge, a plaintiff must establish that he was discharged because he performed an act that public policy authorizes or encourages, or because he refused to perform an act that public policy condemns, and must establish a causal connection between the protected conduct and the discharge. *Id.* ¶ 25.

Nicklaus challenges Count I on several grounds. The Court first addresses Nicklaus's contention that Plaintiff has not alleged an actual termination.

**I. Plaintiff Adequately Alleges Actual Termination.**

Nicklaus argues that Plaintiff does not allege that Nicklaus actually ended his employment and instead relies solely on a theory of constructive discharge. *See* Mot. to Dismiss at 11–13. In its Reply, Nicklaus further contends that Plaintiff's allegation that "Nicklaus terminated his employment" is an "incongruent legal conclusion designed to check off an element" and therefore should be disregarded. Def.'s Reply at 8. The Court disagrees.

Paragraph 28 of the Amended Complaint alleges that Plaintiff "was instructed to contact Nicklaus before returning to work on May 12, 2025" and that, "[w]hen he did so, Nicklaus

terminated his employment." Am. Compl. ¶ 28. Paragraph 29 likewise alleges that "Nicklaus and Oasis terminated Plaintiff in retaliation for his reporting the theft of water and refusing to participate in covering up the illegal conduct." *Id.* ¶ 29. Although the latter allegation includes a legal conclusion concerning Nicklaus's alleged retaliatory motive, paragraph 28 independently alleges the underlying employment action. It identifies the alleged actor, employment action, the circumstances, and date on which the action allegedly occurred. The Court therefore accepts the allegation that Nicklaus terminated Plaintiff's employment as true for purposes of Rule 12(b)(6). *See Iqbal*, 556 U.S. at 678; *Chilcoat*, 41 F.4th at 1207; *cf. Johnson v. City of Shelby*, 574 U.S. 10, 11–12 (2014).

The following sentence does not negate that allegation. Plaintiff further alleges that he "was offered a choice between a one-month severance package or an economically unfeasible relocation to California at the same pay rate, which amounted to a constructive discharge." Am. Compl. ¶ 28. To the extent Plaintiff pleads constructive discharge as an alternative theory of how his employment ended, the Federal Rules of Civil Procedure expressly permit alternative and inconsistent pleading. A party "may set out 2 or more statements of a claim or defense alternatively or hypothetically," Fed. R. Civ. P. 8(d)(2), and "may state as many separate claims or defenses as it has, regardless of consistency," Fed. R. Civ. P. 8(d)(3). *See Campbell v. Barnett*, 351 F.2d 342, 344 (10th Cir. 1965) (recognizing that Rule 8 permits "alternate, hypothetical and inconsistent claims"); *see also Boulware v. Baldwin*, 545 F. App'x 725, 728–29 (10th Cir. 2013).

Nicklaus argues that Plaintiff effectively conceded the absence of an actual termination by defending constructive discharge in his Response. *See* Def.'s Reply at 8. But Plaintiff's reliance on an alternative theory does not erase the factual allegations contained in the operative complaint. *See* Fed. R. Civ. P. 8(d)(2)–(3). Indeed, Plaintiff's Response also characterizes paragraph 28 as

alleging a "termination." Pl.'s Resp. ¶ 6. The Court's task at this stage is not to determine which account Plaintiff ultimately can prove, but whether the factual allegations state a plausible claim. *See Skinner*, 562 U.S. at 529–30.

Accordingly, accepting the well-pleaded allegations as true, Plaintiff has adequately alleged that Nicklaus actually terminated his employment on May 12, 2025. Whether Nicklaus in fact terminated Plaintiff is not before the Court on this Motion.

## II. Nicklaus Has Not Established That Choice of Law Requires Dismissal at the Pleading Stage.

Nicklaus argues that Count I should be dismissed because the Amended Complaint does not plead sufficient facts to establish that New Mexico law governs Plaintiff's retaliatory discharge claim. Specifically, Nicklaus notes that Plaintiff does not allege where he resided during the relevant period, where his office was located, where the El Paso T.I.M.P. project was managed, or where the CRRUA water source was located. Mot. to Dismiss at 9.

A federal court sitting in diversity applies the choice-of-law rules of the forum state. *Unitednet Ltd. v. Tata Commc'ns Am., Inc.*, 112 F.4th 1259, 1266 (10th Cir. 2024) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941)). New Mexico generally applies *lex loci delicti* to tort claims and looks to the law of the place where the wrong occurred. *Id.* at 1266–67. The place of the wrong is ordinarily where the last event necessary to impose liability occurs. *Id.*

The Amended Complaint does not expressly identify where Plaintiff allegedly was terminated. It does, however, allege contacts with New Mexico: Plaintiff alleges that he is a New Mexico citizen residing in Doña Ana County, that Nicklaus regularly conducts business in New Mexico, and that Spencer representatives came to New Mexico for an April 22, 2025 meeting with

CRRUA during the events preceding the alleged termination. Am. Compl. ¶¶ 2, 7, 20–28. Those allegations do not establish that New Mexico was the place of the alleged discharge, and the Court does not so hold. But Nicklaus identifies no competing jurisdiction whose substantive law it contends governs Count I and no material conflict requiring resolution at this stage. *See Ferrell v. Allstate Ins. Co.*, 188 P.3d 1156, 1164 (N.M. 2008) (explaining that a court need not undertake a choice-of-law analysis absent an actual conflict). Nicklaus therefore has not identified an actual conflict that the Court must resolve before determining whether Count I states a claim under the New Mexico law invoked by Plaintiff.

Accordingly, the Court does not determine on the present record that New Mexico law ultimately governs Count I. It concludes only that the identified geographic omissions do not themselves render Count I deficient under Rule 8 or require dismissal under Rule 12(b)(6).

**III. Plaintiff Plausibility Alleges Retaliatory Discharge.**

New Mexico's tort of retaliatory discharge is a narrow exception to the general rule of at-will employment. *Silva v. Am. Fed'n of State, Cnty. & Mun. Emps.*, 37 P.3d 81, 83 (N.M. 2001). To recover, an employee must show that he was discharged because he performed an act that public policy authorizes or encourages, or because he refused to perform an act required by his employer that public policy condemns, and must establish a causal connection between his protected conduct and the discharge. *Shovelin*, 850 P.2d at 1006. The asserted public policy must be sufficiently clear to support the tort, and whether an asserted policy is sufficient is determined on a case-by-case basis. *Id.* ¶ 26.

Plaintiff identifies such a public-policy interest here. He alleges that, after CRRUA instructed Nicklaus that water could not be taken from its source until a meter was recalibrated and reissued, a Spencer superintendent announced that Spencer would "steal water from CRRUA."

Am. Compl. ¶¶ 13–14. Plaintiff alleges that he objected, stated that taking the water without a meter was illegal, and the following day observed and photographed a Spencer employee taking water from the source without a meter. *Id.* ¶¶ 15–16. Because Plaintiff's name appeared on cost estimates charging the federal government for that water, he alleges that he reported the conduct to a U.S. Border Patrol representative, the client on the government contract. *Id.* ¶ 18.

Those allegations implicate the type of public interest New Mexico has recognized as capable of supporting a retaliatory-discharge claim. In *Garrity v. Overland Sheepskin Co.*, the New Mexico Supreme Court concluded that reporting suspected criminal activity implicated a clear mandate of public policy, explaining that public policy favors the exposure of crime. 917 P.2d 1382, 1386–87 (N.M. 1996). And *Shovelin*, discussing *Vigil v. Arzola*, recognized a sufficient public policy interest in protecting an employee who reports an employer's misuse of public funds. *Shovelin*, 850 P.2d at 1006–07, 1009–10. Accepting Plaintiff's allegations as true, his efforts to prevent and report the unauthorized taking of water and his report to the government client that the same water was being charged to the federal government implicate interests extending beyond an ordinary private employment dispute.

That conclusion is consistent with *Garrity*'s additional requirement that whistleblowing further a public rather than merely private interest. 917 P.2d at 1387. There, although the employees alleged suspected criminal activity, the Supreme Court ultimately concluded that their actions primarily served their own and their employer's private interests. *Id.* at 1388–89. The court emphasized that whether whistleblowing serves a sufficiently public purpose depends on the circumstances and recognized that actions enhancing enforcement of the law or otherwise serving a singularly public purpose may satisfy the requirement. *Id.* Here, Plaintiff alleges more than an internal workplace grievance: he allegedly attempted to prevent conduct he understood to be

unlawful and reported the alleged taking and associated charges to a representative of the federal agency that was the client on the contract. Am. Compl. ¶¶ 15–18. Those allegations permit a reasonable inference, at the pleading stage, that Plaintiff's conduct furthered a public interest. That Plaintiff also alleges that he made the report "to avoid any personal or professional repercussions," *id.* ¶ 18, does not establish from the face of the pleading that his conduct served only a private interest. The alleged report concerned the unauthorized taking of water from CRRUA and charges allegedly made to the federal government for that water.

Plaintiff also plausibly alleges a causal connection between his protected conduct and his termination. Causation requires more than the fact that protected conduct preceded a discharge; the employer must have knowledge of the protected activity such that the discharge plausibly could have been motivated by it. *See Lihosit v. I & W, Inc.*, 913 P.2d 262, 264, 267 (N.M. Ct. App. 1996). In *Lihosit*, the employee's claim failed because the employer lacked knowledge at the time of discharge of the asserted protected basis for the employee's conduct. *Id.* at 267. Here, by contrast, Plaintiff alleges facts permitting an inference of Nicklaus's knowledge. He alleges that he formally reported the allegedly retaliatory conduct to his Nicklaus supervisor on April 23, 2025. Am. Compl. ¶ 22. Soon afterward, Nicklaus allegedly replaced that supervisor with Steven Moran, who instructed Plaintiff to take Gallardo—the Spencer superintendent who allegedly had announced that Spencer would "steal water from CRRUA"—to lunch to "make it better and make it go away." *Id.* ¶¶ 14, 23. Plaintiff further alleges that he again reported the harassment to Nicklaus on April 30, 2025 and expressly stated that he was being singled out *for reporting the theft* and subjected to retaliation intended to force him from his job. *Id.* ¶ 26 (emphasis added). Later that same day, Nicklaus allegedly instructed Plaintiff to take paid time off and refrain from attending

a project meeting. *Id.* ¶ 27. Plaintiff alleges that, when instructed to contact Nicklaus before returning to work on May 12, 2025, Nicklaus terminated his employment. *Id.* ¶ 28.

Nicklaus argues that its actions are equally consistent with a good-faith attempt to address Plaintiff's concerns regarding Spencer. At the pleading stage, however, the Court draws reasonable inferences from the well-pleaded allegations in Plaintiff's favor; it does not choose between Plaintiff's plausible inference of retaliation and Nicklaus's competing explanation for the alleged employment action. *See Iqbal*, 556 U.S. at 678; *Chilcoat*, 41 F.4th at 1207.

Taken together, those allegations permit a reasonable inference at the pleading stage that Nicklaus knew of the asserted protected activity and that Plaintiff's alleged discharge was causally connected to it. *See Shovelin*, 850 P.2d at 1006. This case therefore differs from *Lihosit*, where the absence of employer knowledge defeated the necessary inference of retaliatory motive. *See Lihosit*, 913 P.2d at 267. Whether Plaintiff ultimately can establish that his protected conduct actually motivated Nicklaus's decision is a question beyond the scope of the present motion.

Nicklaus also invokes New Mexico's presumption of at-will employment. That principle does not warrant dismissal of Count I. The tort of retaliatory discharge developed precisely as a narrow public policy exception to the at-will doctrine. *Silva*, 37 P.3d at 83. An employee protected against wrongful discharge by an employment contract generally may not invoke the tort because the rationale for the exception is absent. *Id.* Nothing in the Amended Complaint alleges that Plaintiff's employment was governed by a contract limiting Nicklaus's authority to discharge him. Accordingly, the at-will doctrine does not defeat Plaintiff's retaliatory-discharge claim at the pleading stage.

The Court therefore concludes that Plaintiff has plausibly alleged conduct implicating a clear mandate of public policy, facts permitting a reasonable inference that his alleged whistleblowing furthered a public rather than merely private interest, Nicklaus's knowledge of the asserted protected activity, and a causal connection between that conduct and the alleged termination. *See Shovelin*, 850 P.2d at 1006–07; *Garrity*, 917 P.2d at 1387, 1388–89; *Lihosit*, 913 P.2d at 267. Count I therefore is not subject to dismissal for failure to plausibly allege the elements of retaliatory discharge.

**IV. The Court Need Not Resolve Plaintiff's Alternative Constructive Discharge Theory.**

Nicklaus also argues that Plaintiff has not alleged facts sufficient to establish constructive discharge. *See* Mot. to Dismiss at 14–16. Under New Mexico law, constructive discharge is not an independent cause of action, but a doctrine that permits an employee to recast a resignation as a de facto firing based on the circumstances surrounding the employment relationship and the employee's departure. *Gormley v. Coca-Cola Enters.*, 109 P.3d 280, 282 (N.M. 2005). To establish constructive discharge, an employee must show that the employer made working conditions so objectively intolerable that a reasonable person would have felt compelled to resign. *Id.* at 282–83. The inquiry is fact dependent, and "the specific facts of the employment condition, and the severity of its impact upon the employee, are pivotal." *Id.* at 283.

Here, Plaintiff pleads actual termination and constructive discharge in the alternative. He alleges that, after reporting the alleged theft and subsequent retaliation, Spencer personnel subjected him to hostility, attacked his competence, and assigned employees to monitor him. Am. Compl. ¶¶ 19–26. He further alleges that he reported to Nicklaus that he was being singled out for reporting the theft and that the retaliation was intended to force him to resign from his job; that Nicklaus thereafter directed him to take paid time off and refrain from attending a project meeting;

and that, when he contacted Nicklaus before returning to work on May 12, 2025, "Nicklaus terminated his employment." *Id.* ¶¶ 26–28. Plaintiff additionally alleges that he was offered a one-month severance package or relocation to California at the same rate of pay, which he characterizes as economically infeasible and a constructive discharge. *Id.* ¶ 28.

As explained above, Plaintiff's allegation that Nicklaus terminated his employment adequately pleads an actual discharge at this stage. Constructive discharge therefore is not necessary to sustain Count I against Nicklaus on the present Motion. *See Einess v. Tresco, Inc.*, 44 F. Supp. 3d 1082, 1091–92 (D.N.M. 2014) (addressing constructive discharge where the plaintiff resigned rather than was fired). The Court therefore need not determine at this stage whether the circumstances alleged by Plaintiff, considered as a whole, would also support his alternative theory of constructive discharge. That determination is better left for a fully developed record if it becomes necessary to resolve the claim.

## V. Plaintiff's Alleged Failure to Respond to Particular Arguments Does Not Warrant Dismissal.

Nicklaus also argues that Plaintiff conceded certain grounds for dismissal by failing to respond specifically to them. *See* Def.'s Reply at 4–5. Although D.N.M.LR-Civ. 7.1(b) provides that failure to respond may constitute consent to grant a motion, a court may not grant a Rule 12(b)(6) motion merely because the nonmovant failed to respond; the Court must still determine whether the operative complaint states a claim. *See Issa v. Comp USA*, 354 F.3d 1174, 1177–78 (10th Cir. 2003). Because the Court concludes that Count I plausibly states a claim against Nicklaus, Plaintiff's asserted failure to address particular arguments does not independently warrant dismissal.

Because the Court concludes that Plaintiff has plausibly stated a retaliatory-discharge claim against Nicklaus, the Court denies Nicklaus's request to dismiss Count I with prejudice. Plaintiff's alternative request for leave to amend is therefore unnecessary to resolve.

**CONCLUSION**

**IT IS THEREFORE ORDERED** that Defendant Nicklaus Engineering, Inc.'s Amended Motion for a More Definite Statement (Doc. 5) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Defendant Nicklaus Engineering, Inc.'s Motion to Dismiss Count I of Plaintiff's Amended Complaint, Doc. 26, is **DENIED**.

**SARAH M. DAVENPORT**
**UNITED STATES DISTRICT JUDGE**